## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
## AT NASHVILLE

|  |  |  |
|---|---|---|
| **TERESA LYNN BLY** | ) | |
| | ) | **Case No. 3:24-cv-00957** |
| **v.** | ) | |
| | ) | |
| **LELAND DUDEK,** *Acting Commissioner of* | ) | |
| *Social Security Administration*[1] | ) | |

## MEMORANDUM OPINION

Plaintiff Teresa Lynn Bly filed this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of the final decision of the Social Security Administration ("SSA") denying her disability insurance benefits ("DIB") under Title II and supplemental security income ("SSI") under Title XVI of the Social Security Act (the "Act"). The case is currently pending on Plaintiff's motion for judgment on the administrative record (Docket No. 15) and supporting memorandum (Docket No. 16), to which Defendant SSA has responded (Docket No. 18) and Plaintiff has replied (Docket No. 21). This action is before the undersigned for all further proceedings pursuant to the consent of the parties in accordance with 28 U.S.C. § 636(c). (Docket No. 9.)

Upon review of the administrative record as a whole and consideration of the parties' filings, Plaintiff's motion (Docket No. 15) is **GRANTED**. For the reasons stated herein, the Court **REVERSES** the decision of the SSA and **REMANDS** the matter for further administrative proceedings.

---

[1] Leland Dudek became the Acting Commissioner of Social Security on February 17, 2025. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Leland Dudek is substituted for Martin O'Malley (who served as Acting Commissioner from December 20, 2023 to November 29, 2024) as the defendant.

# I.    INTRODUCTION

On February 10, 2020, Plaintiff proactively filed an application for DIB and SSI. (Transcript of the Administrative Record (Docket No. 11) at 262–77.)[2] In those applications, Plaintiff asserted that, as of the alleged onset date of May 15, 2019, she was disabled and unable to work due to bipolar I disorder; manic depression; generalized anxiety disorder; major depressive disorder; hypertension; chronic obstructive pulmonary disease (COPD); emphysema; sciatic nerve damage, hips, legs; torn rotator cuff in shoulders; broken bones in left arm; lower back problem; and neck problem. (AR 309, 330.)

The claims were denied initially on December 16, 2020 (AR 84–105) and upon reconsideration on November 17, 2022 (AR 106–22). On June 21, 2023, Plaintiff appeared with an attorney and testified at a telephone hearing conducted by administrate law judge ("ALJ") Shannon Heath. (AR 34–83.) On August 22, 2023, the ALJ denied Plaintiff's claims. (AR 14–33.) Plaintiff requested a review of the ALJ's decision, but the Appeals Council denied this request on July 1, 2024 (AR 1–6), thereby making the ALJ's decision the final decision of the Commissioner. Plaintiff then timely commenced this civil action, over which the Court has jurisdiction pursuant to 42 U.S.C. § 405(g).

# II.    THE ALJ'S FINDINGS

The ALJ included the following enumerated findings in her August 22, 2023 unfavorable decision:

1.    The claimant meets the insured status requirements of the Social Security Act through June 30, 2022

---

[2] The Transcript of the Administrative Record is hereinafter referenced by the abbreviation "AR" followed by the corresponding Bates-stamped number(s) in large black print in the bottom right corner of each page.

2. The claimant has not engaged in substantial gainful activity since May 15, 2019, her alleged onset date (20 CFR 404.1571 *et seq.* and 416.971 *et seq.*).

3. The claimant has the following severe impairments: anxiety and depression disorders (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 12.00 of 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range of work at all exertional levels, but with the following non-exertional limitations: She can understand, remember, carry out and maintain concentration, persistence or pace for simple and low-level detailed tasks. She can interact appropriately with others. She can only adapt to routine changes in the workplace.

6. The claimant is capable of performing her past relevant work as a packer, stores laborer and laundry attendant. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565 and 416.965).

7. The claimant has not been under a disability, as defined in the Social Security Act, from May 15, 2019, through the date of this decision (20 CFR 404.1520(f) and 416.920(f)).

(AR 20–27.)

## III.    REVIEW OF THE RECORD

The parties and the ALJ, in combination, have thoroughly summarized and discussed the medical and testimonial evidence of the administrative record. Accordingly, the Court will discuss those matters only to the extent necessary to analyze the parties' arguments.

## IV.    DISCUSSIONS AND CONCLUSIONS OF LAW

### A.    Standard of Review

The determination of disability under the Act is an administrative decision. The only questions before this Court upon judicial review are: (1) whether the SSA's decision is supported by substantial evidence, and (2) whether the proper legal criteria were applied to the SSA's

3

decision. *Miller v. Comm'r of Soc. Sec.*, 811 F.3d 825, 833 (6th Cir. 2016) (quoting *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009)). The SSA's decision must be affirmed if it is supported by substantial evidence, "even if there is substantial evidence in the record that would have supported an opposite conclusion." *Blakley*, 581 F.3d at 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). Substantial evidence is defined as "more than a mere scintilla" and "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007); *LeMaster v. Weinberger*, 533 F.2d 337, 339 (6th Cir. 1976) (quoting Sixth Circuit opinions adopting language substantially like that in *Richardson*).

The SSA utilizes a five-step sequential evaluation process to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520(a), 416.920(a). If the issue of disability can be resolved at any point during the evaluation, the ALJ does not proceed to the next step and the claim is not reviewed further. *Id*. First, if the claimant is engaged in substantial gainful activity, she is not disabled. *Id.* Second, if the claimant does not have a severe medically determinable impairment that meets the 12-month durational requirement, she is not disabled. *Id.* Third, if the claimant suffers from a listed impairment, or its equivalent, for the proper duration, she is presumed disabled. *Id.* Fourth, if the claimant can perform relevant past work based on her RFC, which is an assessment of "the most you [the claimant] can still do despite your limitations," 20 C.F.R. § 404.1545(a)(1), she is not disabled. *Id.* Fifth, if the claimant can adjust to other work based on her RFC, age, education, and work experience, she is not disabled. *Id.* The claimant bears the burden of proof through the first four steps, while the burden shifts to the SSA at step five. *Johnson v. Comm'r of Soc. Sec.*, 652

F.3d 646, 651 (6th Cir. 2011) (citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 548 (6th Cir. 2004)).

The Court's review of the SSA's decision is limited to the record made in the administrative hearing process. *Jones v. Sec'y of Health & Human Servs.*, 945 F.2d 1365, 1369 (6th Cir. 1991). A reviewing court may not try a case *de novo*, resolve conflicts in evidence, or decide questions of credibility. *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984) (citing *Myers v. Richardson*, 471 F.2d 1265, 1268 (6th Cir. 1972)). The Court must accept the ALJ's explicit findings and determination unless the record is without substantial evidence to support the ALJ's determination. *Houston v. Sec'y of Health & Human Servs.*, 736 F.2d 365, 366 (6th Cir. 1984).

## B.     The ALJ's Five-Step Evaluation of Plaintiff

In the instant case, the ALJ resolved Plaintiff's claim at step three of the five-step process. The ALJ found that Plaintiff met the first two steps: (1) she had not engaged in substantial gainful activity since the alleged onset date, and (2) her impairments of anxiety and depressive disorders were severe.[3] (AR 1158.) However, the ALJ determined at step three that Plaintiff was not presumptively disabled because she did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (AR 20–22.) At step four, the ALJ determined that Plaintiff had the RFC to perform a full range of work at all exertional levels, but with certain non-exertional limitations. (AR 22–27.) At step five, the ALJ determined that Plaintiff could perform past relevant work. (AR 27.) Therefore, the ALJ concluded that Plaintiff was not under a disability at any time from May 15, 2019, the alleged onset date, through August 22, 2023, the decision date. (AR 27.)

---

[3] The ALJ found that Plaintiff's mild decreased vision acuity, hypertension, emphysema/COPD, fibromyalgia, left upper extremity fracture, distal radius fracture, and alcohol use disorder were non-severe impairments. (AR 20.)

5

## C.    Plaintiff's Assertion of Error

Plaintiff requests that this case be remanded back to the SSA for further consideration based on four assertions of error: (1) the ALJ wrongly found that Plaintiff's COPD was not severe; (2) the ALJ did not adequately evaluate Plaintiff's depression and anxiety symptoms; (3) the ALJ did not adequately assess the medical opinion of consultative examiner Mistie Germek, Ph.D.; and (4) the RFC fails to account for Plaintiff's moderate limitations in concentration, persistence, and pace. (Docket No. 16 at 10–23.)[4]

Accordingly, Plaintiff asks the Court to vacate the ALJ's decision or remand the matter under sentence four of 42 U.S.C. § 405(g), which allows a district court to enter "a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."

### 1.    <u>The ALJ's Consideration of Plaintiff's COPD</u>

In her first assertion of error, Plaintiff alleges that the ALJ erred in her assessment of Plaintiff's COPD at step two of the sequential evaluation analysis. (Docket No. 16 at 10–14.) Specifically, she asserts that the ALJ's finding that her COPD was not "severe" was based on (1) the incorrect assumption that Plaintiff had access to medications for COPD, even though she did not, and (2) the unsupported assumption that these medications would have effectively controlled Plaintiff's COPD symptoms. Plaintiff argues that this error was not harmless because the ALJ did not go on to evaluate Plaintiff's COPD or any other physical limitations when considering Plaintiff's RFC.

---

[4] For the sake of consistency, the Court's citations are to the page number assigned by the Court that are included in blue font at the bottom of the page (i.e., Page __ of __ ) and not to the page number assigned by the party.

Step two of the sequential evaluation analysis requires the claimant to establish the existence of a severe medically determinable impairment that meets the twelve-month durational requirement. *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003). A "medically determinable impairment" is an impairment that "result[s] from anatomical, physiological, or psychological abnormalities that can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1521. A severe impairment is one that "significantly limits your physical or mental ability to do basic work activities," and "significantly" is to be liberally construed in the claimant's favor. 20 C.F.R. § 404.1520(c). *See Griffeth v. Comm'r of Soc. Sec.*, 217 F. App'x 425, 428 (6th Cir. 2007). The purpose of this second step is to enable the SSA to screen out "totally groundless claims." *Farris v. Sec'y of Health & Human Svcs.*, 773 F.2d 85, 89 (6th Cir. 1985). Accordingly, the Sixth Circuit has construed the step two severity regulation as a "de minimis hurdle" in the disability determination process. *Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1988).

An ALJ's failure to find an impairment to be "severe" at step two is not reversible error if the ALJ found another impairment to be "severe" and therefore continued with the next step in the five-step evaluation. *See, e.g.*, *Fisk v. Astrue*, 253 F. App'x 580, 584 (6th Cir. 2007); *Anthony v. Astrue*, 266 F. App'x 451, 457 (6th Cir. 2008). Further, if the ALJ continues with the remaining steps, any error at step two is harmless, so long as the ALJ considered the effects of all medically determinable impairments, including those deemed non-severe. *Hatton v. Comm'r of Soc. Sec.*, No. , 2018 WL 1278916, at *6 (E.D. Mich. Feb. 14, 2018) (citing *Cobb v. Colvin*, No. 12–1156, 2013 WL 1767938 at *4 (D. Kan. Apr. 24, 2013) ("The Commissioner is correct that the failure to find that additional impairments are severe is not in itself cause for reversal. But this is true only so long as the ALJ considers the effects of all of the claimant's medically determinable

7

impairments, both those he deems severe and those not severe."); *Jackson v. Astrue*, 734 F. Supp. 2d 1343, 1361 (N.D. Ga. 2010)).

In her decision, the ALJ found two impairments to be severe: anxiety and depression disorders. The ALJ did not, however, find Plaintiff's COPD to be severe.[5] (AR 20.) The ALJ stated:

> While the claimant has also been diagnosed with . . . emphysema/chronic obstructive pulmonary disease . . . , the evidence establishes those conditions are . . . controlled by the medications and inhalers she takes and uses for the same without adverse medicinal side effects and that they have not imposed more than minimal limitations on her ability to perform basic work activities since her alleged onset date. Therefore, the undersigned finds they are non-severe impairments within the meaning of the Social Security Act . . . .

(AR 20.) In other words, the ALJ found Plaintiff's COPD to be non-severe because it was controlled by medication and did not impose "more than minimal limitations" on Plaintiff's ability to perform basic work activities.

Plaintiff contends that this finding is in error. (Docket No. 16 at 10–14.) She argues that that only basis on which the ALJ justified the finding that Plaintiff's COPD was not severe was that the COPD was controlled by medication. However, Plaintiff argues that this conclusion was a "legal error" because the record shows that Plaintiff could not afford medication. She also contends that there is no evidence to show that her COPD would have been controlled with medication, had she taken it, or that her COPD was, indeed, controlled by her use of a rescue inhaler.

She also argues that she met the "de minimis hurdle" to show that her COPD causes more than a minimal impact on her ability to work. To support this position, she cites to medical record

---

[5] The ALJ also did not find Plaintiff's mild decreased vision acuity, hypertension, fibromyalgia, fractures to her left upper extremity humorous and distal radius, or alcohol use disorder to be severe impairments. (AR 20.)

evidence, her hearing testimony, and a "medical opinion" that limited her to sedentary work. For the first category, medical record evidence, she points to a May 2019 note that indicated that she had been followed for COPD for some time prior; diagnosed her with COPD; and prescribed several medications, including an albuterol nebulizer and inhaler, as well as Breo Ellipta.[6] (AR 581.) She then points to a June 2021 note indicating that she was a "self-pay" patient who was doing well on her "regimen" but lost her insurance and was, therefore, no longer taking medications. (AR 510.)

For the second category, Plaintiff refers to portions of her hearing testimony regarding her breathing issues. During the hearing, she stated that her "breathing" was the "biggest" health issue she faced over the last few years, and that her "lung disability" was occurring when she filed her application for DIB and SSI. (AR 56.) She also stated that she received samples of medication from her doctor, but stopped using the medication once the samples ran out. (AR 68.) She also described difficulties with hot and cold temperatures and with completing chores because of her breathing issues. (AR 58, 64.) Finally, she stated that she had been without insurance for some time, but had received coverage recently and had scheduled a primary care appointment. (AR 69.)

For the third and final category, Plaintiff points to examination notes from Dr. Terrence Leveck. (AR 541–42.) Plaintiff presented to Dr. Leveck for a "systems examination and pulmonary function testing with bronchodilator" on August 17, 2022, but she did not undertake the examination and testing because of elevated blood pressure and headache onset. Dr. Leveck noted that she had a "chronic productive cough," "bilateral prominent wheezes," and "chronic" condition, but that she was not in acute respiratory distress.

---

[6] Plaintiff describes Breo Ellipta as a "a combination inhaled corticosteroid (fluticasone) and a long-acting beta-2 adrenergic agonist (vilanterol) used for the maintenance treatment of COPD and to reduce COPD exacerbations." (Docket No. 16 at 13 n.4.)

9

In response, the SSA contends that Plaintiff failed to demonstrate that her COPD caused any "non-speculative functional limitations." (Docket No. 18 at 4–6.) In other words, the SSA argues that Plaintiff needed to demonstrate that her COPD diagnosis resulted in limitations that "significantly limit[ed] [Plaintiff's] physical or mental ability to do basic work activities," but that Plaintiff merely pointed to her COPD diagnosis without providing more evidence that the diagnosis limited her abilities. (*Id.* at 6 (quoting *Seeley v. Comm'r of Soc. Sec.*, 600 F. App'x 387, 390 (6th Cir. 2015) ("When doctors' reports contain no information regarding physical limitations or the intensity, frequency, and duration of pain associated with a condition, this court has regularly found substantial evidence to support a finding of no severe impairment.")).) The SSA also contends that the record itself does not suggest that Plaintiff's COPD caused any functional limitations that would impact her ability to do work.

The Court finds that the ALJ did not err by failing to find Plaintiff's COPD to be a severe impairment. Although there is evidence in the record to show that Plaintiff suffered from COPD, the mere existence of this impairment does not establish that Plaintiff was significantly limited from performing basic work activities for a continuous period of time because of it. Plaintiff has not pointed to any medical evidence that includes "information regarding physical limitations or the intensity, frequency, and duration of pain associated" with her COPD. *Despins v. Comm'r of Soc. Sec.*, 257 F. App'x 923, 930 (6th Cir. 2007) (quoting *Long v. Apfel*, 1 F. App'x 326, 331 (6th Cir. 2001)). In this circumstance, the Sixth Circuit has "regularly found substantial evidence to support a finding of no severe impairment." *Id.* (quoting *Long*, 1 F. App'x at 331). *See also Higgs*, 880 F.2d at 863 ("[M]ere diagnosis of arthritis . . . says nothing about the severity of the condition."); *Asbury v. Comm'r of Soc. Sec.*, No. 14-CV-13339, 2016 WL 739658, at *3 (E.D. Mich. Feb. 25, 2016) ("[D]iagnoses themselves generally do not establish disability; rather,

10

disability is determined by the functional impairments caused by the diagnosis or condition . . . . And a diagnosis of a condition, without more, does not speak to the severity of the condition or the functional limitations associated with it."). Further, an ALJ "must not accept unsupported medical opinions or a claimant's subjective complaints" when considering whether a claimant has a severe impairment. *See Rideout v. Saul*, No. 3:18-cv-00664, 2019 WL 6206977, at *5 (M.D. Tenn. Sept. 10, 2019) (quoting *Wilkins v. Comm'r of Soc. Sec.*, No. 13-12425, 2014 WL 2061156, at *13 (E.D. Mich. May 19, 2014)).

Here, the medical records indicate that Plaintiff was diagnosed with COPD in or around 2018. (AR 581.) However, the administrative record contains no medical evidence that the COPD caused work-related limitations. Plaintiff argues that pulmonary function testing in 2019 demonstrated that she had a "moderate obstructive lung effect" (AR 584) and that Dr. Leveck's unsuccessful attempt at administering pulmonary functioning testing in 2022 indicates "more than a minimal impact" on Plaintiff's functioning (AR 541–42). While this may be true, neither of these records suggest limitations to work-related activities.

The only evidence in the record that links Plaintiff's COPD with any potential work-related limitations is Plaintiff's own testimony, which included that her "breathing" was her biggest health issue and caused her to experience environmental problems, including with heat, cold, cleaning products, and other aerosols. (AR 56, 58–59.) She also testified that she had to take breaks from household chores because of her breathing issues, which include coughing and being unable to breath, and that she cannot walk long distances because of her breathing. (AR 64–65.) However, as set forth above, an ALJ should not accept a claimant's subject complaints, without other evidence, when considering whether an impairment is severe. *See Rideout*, 2019 WL 6206977 at *5.

Nevertheless, even if the ALJ did err by finding Plaintiff's COPD to be non-severe, such a finding would not be reversible error. Plaintiff argues otherwise and contends that the ALJ failed to consider her COPD when formulating her RFC, so the step two failure is not harmless. However, based on the Sixth Circuit's guidance, the Court disagrees. In *Emard v. Comm'r of Soc. Sec.*, 953 F.3d 844(6th Cir. 2020), the Sixth Circuit detailed the extent to which an ALJ must consider non-severe impairments when making an RFC determination:

> Although the ALJ did not specifically discuss the combined effect of Emard's impairments or mention Emard's nonsevere impairments in assessing his residual functional capacity, she stated that she had carefully considered the entire record and "all symptoms" at this step in the process. This court in *Gooch v. Secretary of Health & Human Services*, 833 F.2d 589 (6th Cir. 1987), concluded that an ALJ's statement that he had conducted "a thorough review of the medical evidence of record," along with the fact that the ALJ had considered the claimant's impairments individually, sufficed to show that the ALJ had considered the impairments in combination. *Id.* at 591–92. It explained that "the fact that each element of the record was discussed individually hardly suggests that the totality of the record was not considered," and "[t]o require a more elaborate articulation of the ALJ's thought processes would not be reasonable." *Id.* at 592. As in *Gooch*, the ALJ's statements that she had considered the entire record and all of Emard's symptoms suggest that she had considered Emard's impairments in combination.

> Moreover, the ALJ specifically noted in her summary of the applicable law that she was required to comply with SSR 96-8p's mandate to "consider all of the claimant's impairments, including impairments that are not severe." District courts in this circuit have held that an ALJ need not specifically discuss all nonsevere impairments in the residual-functional-capacity assessment when the ALJ makes clear that her decision is controlled by SSR 96-8p. *See, e.g.*, *Morrison v. Comm'r of Soc. Sec.*, No. 1:14-CV-1059, 2016 WL 386152, at *4 (W.D. Mich. Feb. 2, 2016), *aff'd*, No. 16-1360, 2017 WL 4278378 (6th Cir. Jan. 30, 2017); *Davis v. Comm'r of Soc. Sec.*, No. 1:14-CV-0413, 2015 WL 5542986, at *4 (W.D. Mich. Sept. 18, 2015). These decisions have relied on this court's decision in *White v. Commissioner of Social Security*, 572 F.3d 272 (6th Cir. 2009), where an ALJ's statement that she considered a Social Security Ruling pertaining to credibility findings sufficed to show that the ALJ complied with that ruling. *Id.* at 287. The ALJ's express reference to SSR 96-8p, along with her discussion of the functional limitations imposed by Emard's nonsevere impairments at step two of her analysis, fully support our conclusion that the ALJ complied with 20 C.F.R. § 416.945(e) and SSR 96-8p.

*Id.* at 851–52 (6th Cir. 2020).

12

Essentially, the Sixth Circuit directs courts to look for three things when determining whether an ALJ properly considered all of a plaintiff's impairments when crafting the RFC: (1) an "express reference" to Social Security Ruling ("SSR") 96-8p; (2) a "discussion of the functional limitations imposed by [the plaintiff's] nonsevere impairments at step two of [the] analysis"; and (3) a "subsequent assurance that [the ALJ] had considered the entire record and all symptoms." *John S. v. Comm'r of Soc. Sec.*, No. 2:22-cv-4207, 2023 WL 6141664, at *4 (S.D. Ohio Sept. 20, 2023) (quoting *Thoenen v. Comm'r of Soc. Sec.*, No. 5:21-CV-1101, 2022 WL 3577414, at *3 (N.D. Ohio Aug. 19, 2022)).

Here, the ALJ included all three statements in her decision. First, as in *Emard*, the ALJ explicitly referenced SSR 96-8p as the ALJ stated that she "must consider all of the claimant's impairments, including impairments that are not severe (20 CFR 404.1520(e), 404.1545, 416.920(e), and 416.945; SSR 96-8p)." (AR 19.) Second, the ALJ discussed why she believed that Plaintiff's COPD did not affect her functional abilities. She stated that Plaintiff's COPD was "controlled by the medications and inhalers she takes and uses . . . without adverse medicinal side effects" and, therefore, her COPD had "not imposed more than minimal limitations on her ability to perform basic work activities." (AR 20.) Third, the ALJ stated that she reviewed the "entire record" and "all symptoms" when formulating Plaintiff's RFC. (AR 22.) Accordingly, the ALJ properly considered Plaintiff's symptoms.

For these reasons, the Court concludes that the ALJ's consideration of Plaintiff's COPD is supported by substantial evidence. The Court therefore rejects Plaintiff's first assertion of error.

13

## 2.    The ALJ's Consideration of Plaintiff's Symptoms of Depression and Anxiety

In her second assertion of error, Plaintiff argues that the ALJ did not appropriately address her subject complaints regarding her depression and anxiety symptoms. (Docket No. 16 at 14–19.) "An individual's statements as to pain or other symptoms will not alone establish that [she is] disabled." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997) (internal citation omitted). Rather, when an individual alleges impairment-related symptoms, the ALJ must evaluate those symptoms using a two-step process.[7] SSR 16-3p, 2017 WL 5180304, at *2. First, the ALJ considers whether there is an underlying medically determinable impairment that could reasonably be expected to produce an individual's symptoms. *Id.* at *3. Second, if an impairment is established, the ALJ must then determine the intensity and persistence of the symptoms and the extent to which the symptoms limit an individual's ability to perform work-related activities. *Id.*

In considering the intensity, persistence, and limiting effects of symptoms, the ALJ must examine the "entire case record," which includes objective medical evidence, the individual's own statements, information from medical sources, and "any other relevant evidence" in the record. *Id.* at *4. The ALJ must also consider the following factors: (1) daily activities; (2) the location, duration, frequency, and intensity of the alleged pain or other symptoms; (3) any precipitating or aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication; (5) the claimant's non-medication treatment; (6) any measures other than treatment the claimant employs to relieve pain or other symptoms; and (7) "other evidence." *Id.* at *7–8.

The consistency of an individual's statement about the intensity, persistence, and limiting effects of symptoms is also important. If an individual's statements are *consistent* with the

---

[7] A "symptom" is defined as an individual's own description or statement of her impairment. SSR 16-3p, 2017 WL 5180304, at *2.

14

objective medical evidence, it is *more* likely that those symptoms have reduced the capacity to perform work-related activities. *Id.* at *8. On the other hand, if those statements are *inconsistent*, it is *less* likely that those symptoms have reduced the capacity to perform work-related activities. *Id.* Consistency is determined by reviewing an individual's statements when seeking disability benefits, statements at other times, and attempts to seek and follow medical treatment. *Id.* at *8–9. An analysis of treatment history may include a consideration of an individual's ability to afford treatment, access to low-cost medical services, and relief from over-the-counter medications, among other information. *Id.* at *9.

The ALJ's determination must contain specific reasons for the weight given to the individual's symptoms that are clearly articulated so that the individual and the subsequent reviewer can assess how the ALJ evaluated the individual's symptoms. *Id.* at *10. However, the Sixth Circuit has held that an ALJ's credibility determination is "essentially unchallengeable" and must be affirmed so long as the findings are "reasonable and supported by substantial evidence." *Hernandez v. Comm'r of Soc. Sec.*, 644 F. App'x 468, 476 (6th Cir. 2016). *See also Calvin v. Comm'r of Soc. Sec.*, 437 F. App'x 370, 371 (6th Cir. 2011) (courts must accord "great weight and deference" to an ALJ's determination regarding the consistency of a claimant's allegations); *Daniels v. Comm'r of Soc. Sec.*, 152 F. App'x 485, 488 (6th Cir. 2005) (claimants seeking to overturn the ALJ's decision still "face an uphill battle"). A credibility assessment is firmly within the ALJ's discretion and not to be decided anew by a reviewing court. *Vaughn v. Berryhill*, No. 3:16–cv–02821, 2018 WL 632377, at *6 (M.D. Tenn. Jan. 11, 2018). It is due "great weight and deference particularly since the ALJ has the opportunity, which we do not, of observing a witness's demeanor while testifying." *Id.* (quoting *Jones v. Comm'r*, 336 F.3d 469, 476 (6th Cir. 2003)). A

reviewing court will not disturb an ALJ's credibility finding "absent compelling reason." *Id.* (quoting *Smith v. Comm'r*, 307 F.3d 377, 379 (6th Cir. 2001)).

The Court finds that substantial evidence supports the ALJ's assessment of Plaintiff's subjective complaints regarding her anxiety and depression. The ALJ found that Plaintiff's "medically determinable impairments could not be reasonably expected to cause her alleged symptoms" and that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." (AR 23.) In coming to this conclusion, the ALJ considered the medical evidence submitted for the relevant period; a consultative psychological evaluation; Plaintiff's treatment history; Plaintiff's work history; Plaintiff's testimony from the June 21, 2023 hearing; and the opinion evidence. (AR 23–26.) In sum, the ALJ observed Plaintiff during her hearing, assessed the medical records, and reached a reasoned decision regarding whether her statements were consistent with the evidence in the record.

Plaintiff argues that the ALJ did not properly consider three separate factors. First, she contends that the ALJ did not consider her limited treatment history, which includes only one medical appointment after Plaintiff's alleged onset date of May 15, 2019. (Docket No. 16 at 17.) Plaintiff believes that the ALJ found her lack of treatment to be inconsistent with her allegations, though she admits that the ALJ did not explicitly state as much. She then argues that the ALJ's finding that her symptoms were controlled by medication is erroneous because she could not afford medication. The Court finds this argument from Plaintiff to be largely confusing and unpersuasive to support her contention that the ALJ's assessment of her subjective complaints was not supported by objective evidence.

16

Next, Plaintiff argues that the ALJ's findings regarding her inability to afford treatment were "erroneous." (*Id.*) The ALJ concluded that there was no indication in the record that Plaintiff was refused treatment due to an inability to pay or that Plaintiff attempted to obtain treatment from a local health department or emergency room. (AR 25.) Plaintiff contends that evidence in the record supports the fact that she was not able to afford treatment, which includes her reliance on samples, her status as a self-pay patient, and the overall lack of treatment in the record. She asserts that the record contains no evidence that she could have received reduced or free treatment, and the suggestion that she go to an emergency room is "not realistic." Although there may be merit to some of Plaintiff's contentions, these do not demonstrate that the ALJ's conclusion regarding Plaintiff's subjective complaints was "erroneous." The ALJ properly considered Plaintiff's treatment, including whether she was able to afford treatment and whether she was insured.

Finally, Plaintiff contends that the ALJ's factual findings concerning her daily activities are not supported by substantial evidence. (*Id.* at 18.) She maintains that some of the ALJ's findings regarding her daily activities are contradicted by other findings. For example, Plaintiff contrasts the ALJ's finding that Plaintiff can "understand" without any significant problems (AR 25) with the ALJ's finding that Plaintiff has a "moderate" limitation in understanding, remembering, or applying information (AR 21). The Court finds no inconsistency here because the ALJ explained that Plaintiff's mental impairments prevent her from understanding, remembering, or applying "high level detailed and complex instructions," which is what merited a "moderate" limitation in those functions at an earlier step. (AR 21.)

Plaintiff also argues that the ALJ failed to adequately support her finding that Plaintiff "follows oral and written instructions fine, needs few reminders, little encouragement and usually finishes what she starts." (AR 25.) To support this finding, the ALJ referenced a large swath of

17

records, but did not offer pincites. The Court agrees with Plaintiff that the ALJ's lack of specificity is frustrating. However, this alone is not enough to render the ALJ's credibility analysis unsupported by substantial evidence. Finally, Plaintiff references other portion of the record that could support her position, but these additional references do not render the ALJ's findings erroneous. *See Valley v. Comm'r of Soc. Sec.*, 427 F.3d 388, 391 (6th Cir. 2005) ("We may not reverse a decision supported by substantial evidence, even if we might have arrived at a different conclusion.").

In sum, the ALJ relied on specific evidence to support her conclusion that Plaintiff's subjective complaints were not entirely consistent with the record, including objective medical evidence, Plaintiff's testimony regarding her symptoms and daily activities, and Plaintiff's treatment history. Given such support, as well as the significant deference that must be afforded the ALJ's credibility determination, the Court finds no reversible error in the ALJ's finding. *See Hernandez v. Comm'r of Soc. Sec.*, 644 F. App'x 468, 476 (6th Cir. 2016) ("[W]e affirm if the ALJ's determination is reasonable and supported by substantial evidence.") (internal citation and quotations omitted). The Court therefore rejects Plaintiff's second assertion of error.

### 3. The ALJ's Consideration of Dr. Germek's Opinion

In her third assertion of error, Plaintiff argues that her case should be remanded because the ALJ's evaluation of the medical opinion of Mistie Germek, Ph.D., is unsupported by substantial evidence because the ALJ's supportability and consistency analyses were inadequate. (Docket No. 16 at 19–17.)

When evaluating medical opinions, the presiding ALJ is not required to "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s)," but is instead directed to consider the "persuasiveness" of the medical opinions based on five categories, which

18

include supportability, consistency, the provider's relationship with the claimant, the provider's specialization, and other factors such as familiarity with the disability program's policies. 20 C.F.R. § 404.1520c(a)-(c).[8]

Supportability and consistency are the "most important factors" in this analysis. *Id.* § 404.1520c(a). In assessing supportability, medical opinions and prior findings are "more persuasive" if the objective medical evidence and supporting explanations that are used to support those opinions or findings are "more relevant." *Id.* § 404.1520c(c)(1). In assessing consistency, medical opinions and prior findings are "more persuasive" if they are "more consistent" with evidence from other medical and nonmedical sources. *Id.* § 404.1520c(c)(2). These two most important factors – supportability and consistency – must be explained, while the other factors may be explained. *Id.* § 404.1520c(b)(2). To determine the persuasiveness of a particular medical opinion, a court must evaluate whether the ALJ properly considered the factors set forth in the regulations. *Toennies v. Comm'r of Soc. Sec.*, No. 1:19-CV-02261, 2020 WL 2841379, at *14 (N.D. Ohio June 1, 2020) (quoting *Ryan L.F. v. Comm'r of Soc. Sec.*, No. 6:18-cv-01958, 2019 WL 6468560, at *4 (D. Or. Dec. 2, 2019)).

The applicable SSA regulations "require that the ALJ provide a coherent explanation of his reasoning." *Lester v. Saul*, No. 5:20-cv-01364, 2020 WL 8093313, at *14 (N.D. Ohio Dec. 11, 2020), *report and recommendation adopted sub nom. Lester v. Comm'r of Soc. Sec.*, No. 20-1364, 2021 WL 119287 (N.D. Ohio Jan. 13, 2021). The ALJ must provide a "minimum level of

---

[8] This regulation changed the articulation required by ALJs when considering medical opinions. The prior regulations were interpreted to set forth a general hierarchy of medical source opinions. 20 C.F.R. § 404.1527. Although the new regulations have eliminated this hierarchy, an ALJ must still "'articulate how [he/she] considered the medical opinions' and 'how persuasive [he/she] find[s] all of the medical opinions.'" *Toennies v. Comm'r of Soc. Sec.*, No. 1:19-CV-02261, 2020 WL 2841379, at *14 (N.D. Ohio June 1, 2020) (quoting *Ryan L.F. v. Comm'r of Soc. Sec.*, No. 6:18-cv-01958, 2019 WL 6468560, at *4 (D. Or. Dec. 2, 2019)).

19

articulation" in his determinations and decisions to "provide sufficient rationale for a reviewing adjudicator or court." *Warren I v. Comm'r of Soc. Sec.*, No. 20-495, 2021 WL 860506, at *8 (N.D.N.Y. Mar. 8, 2021) (quoting 82 Fed. Reg. 5844-01 (2017)). A failure to meet these "minimum levels" of articulation "frustrates" the court's ability to determine if the ALJ's decision was supported by substantial evidence. *Hardy v. Comm'r of Soc. Sec.*, 554 F. Supp. 3d 900, 906 (quoting *Vaughn v. Comm'r of Soc. Sec.*, No. 20-1119, 2021 WL 3056108, at *11 (W.D. Tenn. July 20, 2021)).

On July 28, 2022, Dr. Germek performed a clinical interview and mental status examination of Plaintiff and reviewed her medical records from 2018 and 2020.[9] (AR 536–39.) The purpose of this undertaking was to "gain more information relating to [Plaintiff's] level of functioning and abilities, and to determine the impact of any possible mental health diagnoses on these." (AR 536.) Dr. Germek provided a summary of Plaintiff's personal and family history; substance-abuse history; legal history; psychiatric history; mental status; medications; work history; and activities of daily living and functioning. (AR 536–39.) She then provided a summary of the examination and her findings:

> Teresa is a 59-year-old female who states that she has never applied for disability before. Teresa appeared to be a good historian.
>
> Teresa appears to fall below the average range of intellectual functioning, though no formal intelligence testing was conducted. She showed evidence of moderate impairment in her short-term memory. She showed evidence of moderate impairment in her ability to sustain concentration. She showed no evidence of impairment in her long-term and remote memory functioning.
>
> Her current psychiatric state was depressed and anxious. She shows evidence of a moderate impairment in her social relating. She appears to be markedly impaired

---

[9] Dr. Germek's notes indicate that she reviewed medical records from 2018 and 2020, rather than 2018 through 2020. (AR 536.) It is unclear if Dr. Germek did not review any records from 2019 or if this is a typographical error.

in her ability to adapt to change and manage stress. She appears to have had numerous jobs and last worked in 2018. She appears able to handle finances.

(AR 539.) Finally, Dr. Germek listed four diagnostic impressions for Plaintiff: (1) persistent depressive disorder, (2) panic disorder, (3) generalized anxiety disorder, and (4) alcohol use disorder, in sustained remission. (AR 539.)

In her decision, the ALJ found Dr. Germek's opinion to be "not persuasive or accepted." (AR 26.) The ALJ summarized Dr. Germek's report and opinion as follows:

> [Plaintiff] advised Dr. Germek about her mental problems and treatment to date, and reported she stopped taking her medications in 2021 because she did not want to take them anymore, but needed them and was in such a deep state of depression that she did not want to even go to her physician to get the same. The claimant also reported she was anxious and depressed and having several severe symptoms typically associated with those conditions at that time.
>
> Dr. Germek interviewed her and noted she appeared to be her stated age and was fully alert, oriented and cooperative. She also noted the claimant's speech was normal, that her responses were coherent and easy to understand, and thought processes clear and logical for the most part. However, Dr. Germek did note that she appeared anxious and depressed, that her speech was rapid, responses overly detailed and difficult to follow, thoughts scattered to some extent, and that she had difficulty answering questions directly at various times during her evaluation. She tested the claimant and noted she was able to recall her date of birth and Social Security number from memory, that she could identify the current President and four recent ones, four large cities and recall all three items immediately after they were said to her and after a three-minute delay. Dr. Germek also noted she knew how many months there were in a year, that she could identify the shape of a ball and colors of the American flag, spell the word "world" correctly, and name common objects such as an ink pen and watch. She further noted the claimant had good vocabulary skills and that she was able to complete simple addition, subtraction and multiplication problems in her head. However, Dr. Germek did note that she was unable to perform simple division problems in her head. She concluded the claimant appeared to be performing in the below average range of intellectual functioning.
>
> Dr. Germek diagnosed her with generalized anxiety, panic and persistent depression disorders on that date, and opined she was only moderately limited in her to ability to concentrate, short-term memory functioning and interact with others at most because of the same and was not limited in her long-term and remote memory functioning at all, but appeared to be markedly limited in her ability to manage stress and adapt to changes based on her subjective report to that effect

21

(AR 24.) The ALJ then went on to assess the persuasiveness of Dr. Germek's opinion as follows:

> Dr. Germek's opinion is not persuasive or accepted; since it appears to have been based in part on the claimant's subjective report; because new evidence received at the hearing level establishes she is not as limited in her ability to interact with others, manage stress and adapt to changes as she previously opined; it is not expressed in appropriate vocational terms for assessing mental limitations; and it is not supported by and is inconsistent with the totality of the evidence in the record as a whole (Exhibit 9F).

(AR 26.)

In her motion, Plaintiff argues that the ALJ failed to properly address Dr. Germek's opinion, particularly her conclusion that Plaintiff was "markedly limited" in her ability to adapt to change and manage stress. She contends that the ALJ's analysis "lacks any evidentiary support" and contains conclusory statements with no explanation. (Docket No. 16 at 20.) For example, Plaintiff points to the ALJ's conclusion that Dr. Germek's opinion "appears to have been based in part on the claimant's subjective report." (*Id.* at 20.) Plaintiff argues that, in fact, Dr. Germek's opinion was based on "evidence," including the examination she performed. (*Id.*) Plaintiff points to specific instances within the opinion that reference "evidence," including that she "showed evidence" of moderate impairments in short-term memory and an ability to concentrate, but "showed no evidence" of impairments in long-term or remote memory. (*Id.*)

Plaintiff also points to the ALJ's conclusion that "new evidence received at the hearing level" contradicted Dr. Germek's opinion and that her opinion was "inconsistent" with "the totality of the evidence." (*Id.* at 21.) Plaintiff argues, however, that the ALJ failed to specify what the "new evidence" or "totality of the evidence" was that made Dr. Germek's opinion less persuasive. (*Id.*) Plaintiff contends that the ALJ provided "boilerplate statements" that do not meet the applicable standards for discussing the persuasiveness of an opinion. (*Id.*)

22

In response, the SSA maintains that the ALJ sufficiently discussed the persuasiveness of Dr. Germek's opinion. (Docket No. 18 at 11–15.) For supportability, the SSA argues that the ALJ adequately discussed that Dr. Germek's opinion was "based in part" on Plaintiff's subjective reports. (*Id.* at 13–14.) The SSA emphasizes that subjective complaints are distinct from objective medical evidence; that an ALJ may find an opinion to be less supportable when based "excessively" on subjective complaints; and that adequate supportability discussions may be brief. For consistency, the SSA argues that Dr. Germek considered Plaintiff's medical records from only a limited period of time, 2018 to 2020, but, by contrast, the ALJ was able to consider additional medical records that were received later. (*Id.* at 14–15.) The SSA contends that these later records were not consistent with Dr. Germek's opinion. (*Id.* at 14–15.) The SSA further contends that, although the ALJ did not explicitly reference which new records were inconsistent with Dr. Germek's opinion, the ALJ discussed contradicting evidence at other points in the decision and "considered that there was no evidence of treatment after Dr. Germek's examination."

In reply, Plaintiff once again focuses on the fact that Dr. Germek based her opinion on evidence rather than Plaintiff's subjective complaints. (Docket No. 21 at 4–5.) Plaintiff argues that Dr. Germek's examination revealed "evidence" that Plaintiff had scattered thinking and difficulty responding to questions, which were sometimes difficult for her to follow. As for the consistency prong of the ALJ's analysis, Plaintiff asserts that the ALJ's reference to unspecified "new evidence" is a "vague statement" that makes judicial review impossible.

The ALJ's brief analysis of Dr. Germek's opinion, without more explanation or citation to the record, does not satisfy the standards set forth under the regulations at 20 C.F.R. § 404.1520c. The ALJ found Dr. Germek's opinion to be unpersuasive for four reasons: (1) the opinion is "based in part on [Plaintiff's] subjective report"; (2) the opinion is "not expressed in appropriate

vocational terms for assessing mental limitations"; (3) new evidence established that Plaintiff was not as limited in her ability to interact with others, manage stress, and adapt to changes as Dr. Germek opined; and (4) the opinion is not supported by or consistent with "totality of the evidence in the record as a whole." (AR 26.) Although the ALJ offers some explanation for these conclusions, her decision does not enable this Court to undertake a "meaningful review," which "frustrates" the Court's ability to determine if the ALJ's decision was supported by substantial evidence. *Terhune*, 2022 WL 2910002 at *3; *Hardy*, 554 F. Supp. 3d at 906.

First, the Court finds that the ALJ's conclusion that Dr. Germek's opinion is less persuasive because it "appears" to have been based, at least in part, on Plaintiff's subjective complaints is not based on substantial evidence. This conclusory statement does not refer to any particular subjective complaints from Plaintiff or explain why Dr. Germek's reference or consideration of those statements would render her opinion less persuasive. Further, the ALJ's statement that it "appears" that the opinion is based on subjective complaints renders this conclusion almost meaningless. The ALJ must "provide a coherent explanation of her reasoning," *Lester*, 2020 WL 8093313 at *14, and this hedging language is not coherent or helpful to the Court to assess how and why the ALJ decided that Dr. Germek's reliance on Plaintiff's complaints rendered the opinion less persuasive.

Second, the ALJ concludes that Dr. Germek's opinion is less persuasive because it is "not expressed in appropriate vocational terms for assessing mental limitations." However, the ALJ fails to identify the vocational terms that Dr. Germek uses that are allegedly inappropriate. The ALJ also fails to state what "appropriate" vocational terms would be. Further, the ALJ does not explain how this alleged misuse of terms renders the opinion more or less "relevant" for purposes of assessing supportability. *See* 20 C.F.R. § 404.1520c(c)(1). Accordingly, the Court is unable to

24

assess how and why the ALJ decided that Dr. Germek's use of certain vocational terms rendered the opinion less persuasive.

Third, with respect to the ALJ's conclusion that new evidence contradicts Dr. Germek's opinion on Plaintiff's abilities to interact with others, manage stress, and adapt to changes, the ALJ does not explain what this new evidence is or how it is inconsistent with Dr. Germek's opinion. The ALJ does not point to specific evidence in the record that contradicts or calls into question Dr. Germek's position on these limitations. Rather, in its briefing, the SSA argues that the ALJ discussed this "new evidence" at other points in the decision. (Docket No. 18 at 14–15.) However, an after-the-fact explanation from the SSA's counsel, like the one offered here, is insufficient and can have no impact on the Court's analysis. *See Keeton v. Comm'r of Soc. Sec.*, 583 F. App'x 515, 524 (6th Cir. 2014) ("In reviewing an ALJ's findings and conclusions, this Court shall not 'accept appellate counsel's *post hoc* rationalization for agency action in lieu of [accurate] reasons and findings enunciated by the Board.'") (quoting *Hyatt Corp. v. N.L.R.B.*, 939 F.2d 361, 367 (6th Cir. 1991)).

Nevertheless, even if the Court did not consider this argument, it would not be convincing. As an example of the "new evidence" with which Dr. Germek's opinion was inconsistent, the SSA refers to Plaintiff's May 6, 2019 visit to Maple Street Medical Clinic and the "lack of significantly abnormal mental status examination findings" in that record. (*Id.* at 15.) While it is correct that the ALJ referenced this May 6, 2019 record at one point in her decision, it is not true that the ALJ found it to be inconsistent with Dr. Germek's opinion. If the ALJ did find the two to be inconsistent, she did not make that finding clear to the Court.[10]

_____

[10] The SSA's argument also ignores the context of Plaintiff's May 6, 2019 visit to Maple Street Medical Clinic, which was summarized on a one page form with handwritten notes. (AR 557.) Plaintiff's chief complaint was described as "discuss medications and disability, acute weight

Fourth and finally, the ALJ states that Dr. Germek's opinion is not supported by or consistent with the "totality of the evidence in the record as a whole." However, the ALJ does not state which portion of the opinion is inconsistent with the "totality of the evidence" and does not describe – either generally or specifically – what the evidence shows in totality. This broad statement does not enlighten the Court on either the relevance or consistency of Dr. Germek's opinion.

As it stands, the ALJ's discussion of Dr. Germek's opinion leaves the Court to wonder how the ALJ reached her conclusion. Accordingly, the Court cannot find that the ALJ appropriately weighed Dr. Germek's opinion because the ALJ failed to consider the supportability and consistency factors as required under the regulations. This failure frustrates the Court's ability to determine whether Plaintiff's disability determination was supported by substantial evidence. *See Hardy*, 554 F. Supp. 3d at 906; *Todd v. Comm'r of Soc. Sec.*, No. 3:20-cv-1374, 2021WL 2535580, at *7–8 (N.D. Ohio June 3, 2021) (finding that the "ALJ's terse reasoning failed to build an accurate and logical bridge between the evidence and his conclusion that Dr. Sprout's opinion was substantially inconsistent with the medical record"). For these reasons, remand is required.

### 4. The ALJ's Consideration of Plaintiff's Mental Limitations

In her fourth and final assertion of error, Plaintiff asserts that her case should be remanded because the ALJ's RFC determination is unsupported by substantial evidence due to its failure to properly account for Plaintiff's mental limitations. (Docket No. 16 at 21–23.) Specifically, Plaintiff alleges that the RFC failed to account for her "moderate" limitations in concentration, persistence,

---

loss, would like psych referral and pain management referral." (*Id.*) There is no reference to Plaintiff's abilities to interact with others, manage stress, or adapt to changes. Accordingly, the Court is not persuaded by the SSA's argument that this particular medical record is the "new evidence received at the hearing level" that the ALJ believes "establishes [that Plaintiff] is not as limited in her ability to interact with others, manage stress and adapt to changes." (AR 26.)

or pace ("CPP"). Plaintiff takes issue with the RFC's finding that she could maintain CPP for "simple and low-level detailed tasks" even though the ALJ separately found that Plaintiff had a "moderate" limitation in CPP. (Docket No. 14-1 at 9.)

Here, because the Court finds that remand of this matter is required so that the ALJ can properly consider the opinion of Dr. Germek, the Court finds it unnecessary to determine whether the RFC properly accounted for Plaintiff's "moderate" limitations in CPP. The ALJ's consideration of Dr. Germek's opinion will necessitate a reconsideration of Plaintiff's RFC. Although the ALJ may reach the same conclusion regarding Plaintiff's RFC – including whether and to what extent Plaintiff is limited with respect to CPP – it is not necessary to address this final assertion of error. *See Sparks v. Kijakazi*, No. 2:21-CV-102, 2022 WL 4546346, at *12 (E.D. Tenn. Sept. 28, 2022) (citing *King v. Kijakazi*, No. 1:20-CV-196, 2021 WL 3520695, at *9 (E.D. Tenn. July 21, 2021)); *Palmore v. Comm'r of Soc. Sec.*, No. 1:20-CV-36, 2021 WL 1169099, at *9 (S.D. Ohio Mar. 29, 2021) (finding it unnecessary to address remaining assignments of error "[a]s resolution of this issue on remand may impact the remainder of the sequential evaluation process"). The Court therefore declines to address Plaintiff's remaining argument regarding the ALJ's alleged failure to account for her "moderate" limitations in CPP in her RFC.

## V.  CONCLUSION

For the above stated reasons, Plaintiff's motion for judgment on the administrative record (Docket No. 15) is **GRANTED**, the Social Security Administration's decision is **REVERSED**, and this matter is **REMANDED** to the Social Security Administration for further administrative proceedings consistent with the memorandum opinion.

An appropriate Order will accompany this memorandum opinion.


BARBARA D. HOLMES
United States Magistrate Judge